In the matter of the insolvency of the UNION BANK OF JERSEY CITY.

An order was made allowing the receiver of an insolvent bank $6,000 a year for compensation, from the date of his appointment. It was held not to cover or extend to any time after the date of the order. The receiver was not allowed to charge the fund with the expense of clerks whose services were unnecessary, nor with the expense of a daily newspaper; nor for fees of counsel to resist applications to the court which he ought not to have opposed. On the other hand, his individual indebtedness to the bank, which existed when he was appointed receiver, was, he being insolvent, deducted from his commissions. He was charged with the amount of revenue stamps belonging to the bank, which was lost through his neglect in not presenting them for redemption within the time limited by the United States statute, and with the moneys of the bank loaned by him while receiver, on inadequate security, and lost. He was allowed for moneys collected and misappropriated by an attorney whom he employed in the business of the trust, in which it was necessary for him to act by an attorney-at-law; the attorney employed being in good standing and there being no evidence of any negligence on the part of the receiver.

On exceptions to master's report on the receiver's account.

*Mr. G. Collins, Mr. W. Brinkerhoff* and *Mr. C. H. Voorhis,* for the exceptions.

*Mr. W. P. Douglass, contra.*

THE CHANCELLOR.

The receiver was appointed January 20th, 1875. He filed no inventory. The nominal assets were about $300,000, of which $166,000 consisted of discounted commercial paper, unmatured; about $86,000 of such paper past due, and about $48,000 of stocks, furniture, cash &c. The liabilities were about $100,000 due depositors, and $36,000 due other banks. Pursuant to the order of this court, the receiver made and paid three dividends, the

NOTE.—As to the liability of an executor &c. for losses caused by agents, attorneys &c. necessarily and judiciously employed by him in executing his trust, *Schouler's Exrs. ¿ 321; Taylor's Estate, 52 Cal. 477; Marshall v. Moore, 2 Mon. 69; Julian v. Abbott, 73 Mo. 580; Deberry v. Ivey, 2 Jones Eq. 370; Tanner v. Bennett, 33 Gratt. 251; Hollister v. Burritt, 14 Hun 291.*—REP.

Union Bank Case.

first of fifty per cent., the second of twenty-five per cent. and the third of ten per cent.—in all, amounting to eighty-five per cent. of the indebtedness. Two of these were paid before the 30th of June, 1875. He had then received of the assets $149,599.45. The entire amount of his collections during the receivership was $193,553.59. The third dividend was paid in 1876, and in April of the following year the receiver made an application for an allowance for his services. An order was made awarding him $6,000 a year from the date of his appointment. At that time $172,442.48 had been collected of the total collections, which were, as before stated, $193,553.59, and $147,708.25 had been paid out of the total payments, which were $150,368.49. The three dividends had been paid to every one entitled, except one payment on account of the first dividend, three on account of the second and five on account of the third; three hundred and forty-two of the three hundred and seventy-two items had been collected, and eight hundred and ninety-nine out of the nine hundred and eighty-five entries made in the cash-book. Though in March, 1877, a few days before the order for allowance was made, the receiver made a report that a further dividend of fifteen per cent. would probably be made within the ensuing sixty days, no further dividend was ever declared. The collections after March, 1877, amounted to only about $25,000 and the payments to about $3,000. The receiver was removed January 10th, 1881. From the time of his appointment to about the 1st of May, 1877, about two years and four months, he retained the cashier of the bank in his employ at a salary of $2,500 a year for the first few months, from January to April, 1875; $2,000 a year for the next six months; $1,800 a year for the next six months, and for the rest of the time up to about the 1st of May, 1877, at $1,500 a year. He also kept the book-keeper of the bank till May or June, 1875, and the assistant book-keeper and messenger until April 7th, 1875. The salaries he paid them were, to the former, at the rate of $850, and to the latter $600 a year up to February, 1875, and then they were reduced one-quarter. The master has reported that there was no need of employing a clerk at the expense of the fund after June 30th, 1875, and that, at all events, not more than $500 should have

been expended out of the fund, for assistance, during the rest of the receivership. I concur in the views of the master on the subject, for the reasons he has given. The clerical work that remained to be done after the payment of the second dividend was not such as to justify the receiver in subjecting the fund to the expense of a salaried clerk, nor, indeed, was it such as to warrant any more expenditure than was necessary to obtain occasional assistance, and the expenditure for that should not have exceeded $500.

The receiver makes a claim of $3,250 against the fund for his compensation as president of the bank from July 1st, 1874, to the time of the failure. It appears that he was employed as president in July, 1874, and served from that time until the failure. There was never any agreement or understanding as to his compensation. The institution was embarrassed when he entered on the presidency, and he was employed with a view to restoring it to a healthy condition. He says he found it in a bad state. His efforts to restore it proved unsuccessful. The question is whether he should be paid for those services. It appears that the bank lost during his administration, through an irregular loan made by him to one A. W. Thompson for $2,000, and a like sum by an overdraft by C. C. Westervelt, the receiver's brother-in-law. Under the circumstances, the claim for compensation ought not to be allowed.

In April, 1877, the counsel of the receiver obtained, as before stated, an order of this court that the receiver be allowed for his services at the rate of $6,000 a year from the date of his appointment. The receiver insists that that order fixed his salary down to the time of his removal; that it established his right to $6,000 a year for his services, whatever they might be, much or little, so long as the receivership should continue. It is plain that the order will bear no such construction. It was, as its language indicates, intended to fix the compensation to which the receiver was entitled only up to the date of the order. When the application for the allowance was made, the receiver had paid eighty-five per cent. of the claims of creditors, and he stated that it was probable that he would pay a final dividend of fifteen per cent. within the next sixty days. After March, 1877, he collected

Union Bank Case.

only about $25,000 and paid out only about $3,000. Of the $25,000, $12,000 were collected on a claim against the New Jersey Midland Railway Company and its endorser, and that money was collected by the receiver's attorney. The master recommends that the compensation of the receiver be at the rate fixed by the order—$6,000 a year up to the date of the order, and for all the subsequent term the sum of $3,500. I regard such an award of compensation as just.

The receiver charges the fund with the expense of a daily newspaper for his office. The master reported against the allowance, and I see no ground on which it could be made in this case.

The receiver also charges the fund with the fees of counsel employed by him to resist two applications to this court made by creditors; one for an order requiring him to furnish a statement of the assets—report the condition of the estate in his hands—and the other for an order requiring him to account. As to the first, he appears to have been represented in that matter by the counsel whom he employed generally in the business of the receivership, and the charge in question is, for additional counsel. It is quite enough to say that there is no ground for allowing that charge. As to the other, the creditors came before this court asking that he be called to an account, and their application was granted. He ought not to have resisted it. Nor ought he to have opposed the other.

Among the assets of the bank which came into the receiver's hands was a note of J. E. Gould, of Philadelphia, for $1,500, endorsed by James M. Barrows, for whom the bank discounted it. Gould died in February, 1875, leaving an estate in Philadelphia, where it was administered, sufficient for the payment of his debts. Beyond inquiring of Barrows, who was Gould's father-in-law, as to the solvency of the estate of the latter, the receiver appears to have done nothing whatever towards the collection of the note from Gould's estate, and Barrows was insolvent. The claim has therefore been lost. The receiver has manifestly been so derelict in his duty in the matter as to be chargeable with the claim.

He objects that certain indebtedness of his to the bank ·for money borrowed by him of it ought not to be charged against his compensation as receiver, and claims that though he cannot pay his debt to the bank, he ought to receive his compensation without regard to that fact. When he was appointed it was not, it is hardly necessary to remark, supposed that he was an insolvent debtor of the bank. He cannot reasonably expect that the court will pay him, a trustee, his commissions, and leave unpaid his debt to the trust estate.

His attorney received in a settlement made by him with Cornelius A. Wortendyke, certain notes, one of which he applied, without authority from the receiver, to his own use. A part of the amount of it was due him on account of his professional services to the receiver, as the master finds on making up the account between them. The balance he charges to the receiver. It appears that the receiver knew nothing about the settlement, nor that it had been made, until after the death of the attorney. The master has reported that the receiver should be held liable for the loss. I do not think so. The claim was placed by the receiver in the hands of his attorney for collection. It was necessary for him to employ an attorney in the matter, and when his attorney received the notes he was acting for the receiver and in the line of his duty in thus collecting the claim, or rather, the balance remaining due on a claim the rest of which he had collected. He took the notes, which were at four, five and six months respectively, September 15th, 1879, and died in January following. The note in question, which was the note at four months, was discounted for him by a bank in Jersey City. It was not paid at maturity, but was paid afterwards. There is nothing in the case to show any want of good faith or of diligence on the part of the receiver in the matter. He very properly entrusted the collection of the claim to an attorney, and the one whom he selected was in good standing. The attorney, acting fairly and for the benefit of the trust, made a settlement, in which he took the three notes. He passed one of them away ; the others, after his death, were delivered over to the receiver. To part of the proceeds of the note which he got discounted he

was entitled.   The rest of that money he ought to have paid to
the receiver.   He may have intended to claim more for his ser-
vices up to that time than the master has allowed; and may
have supposed that the whole of the amount of the note was
justly due him ; or he may have deferred a settlement with the
receiver in view of the fact that he would probably do other
professional business for him for which he would be entitled to
compensation from him.   The receiver should not bear the loss.
The exception on this point will be allowed.

The receiver did not present for redemption the revenue
stamps on stamped checks which the bank owned at the time of
its failure.   He says he thought they could be redeemed at any
time.   In this he was mistaken.   The act of congress of March
1st, 1879, provides that claims for redemption of revenue stamps
may be allowed, if presented within three years from the pur-
chase thereof from the government or a government agent for
the sale of stamps, but not otherwise.   *Rev. Stat. U. S.* § *3426 ;
Rich. Sup. 447.*   When the receiver was removed the opportu-
nity for redemption had been lost through his neglect, and he is
responsible for the loss.   On his paying the balance against him
on his account, he will be entitled to the stamps, so that if here-
after there be any provision made for redeeming them he may
have the benefit of it.

The charges made against the receiver for funds of the estate
lent by him since his appointment, and lost, are all proper.   It
was a dereliction of duty on his part to lend the funds of the
estate without sufficient security, and in the cases under consid-
eration he appears to have lent them to persons who he knew
were without pecuniary responsibility, and merely for their
accommodation.

I find no ground for the exception made to the charge against
the receiver for money collected by him on the Wortendyke
claim (or New Jersey Midland railway claim), beyond that for
which he has accounted, except, of course, as to the money re-
ceived by the attorney on the note above mentioned.

The exceptions will all be overruled except that which is made
to the charge of the money received by the attorney on the note
and not accounted for.